# Exhibit "A"

**FOX ROTHSCHILD LLP**
Michael G. Menkowitz, Esq.
Jesse M. Harris, Esq.
Matthew A. Skolnick, Esq.
Two Commerce Square
2001 Market Street – Suite 1700
Philadelphia, PA 19103
215-299-2000
mmenkowitz@foxrothschild.com
jesseharris@foxrothschild.com
mskolnick@foxrothschild.com

*Proposed Attorneys to Andrew Sklar, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| Iron Hill Brewery, LLC, *et al.*,[1] | : | Case No. 25-20476 (JNP) |
| | : | (Joint Administration Requested) |
| Debtors. | : | |
| | : | |

---

[1] The twenty-three (23) Debtors in these cases, along with the last four digits of their federal tax identification numbers are: (i) C&D Brewing Company of Marlton, LLC (7250) (Case No. 25-20450-JNP); (ii) C&D Brewing Company of Voorhees, LLC (9118) (Case No. 25-20451-JNP); (iii) Chesapeake & Delaware Brewing Company, LLC (2130) (Case No. 25-20452-JNP); (iv) C&D Brewing Company of Lancaster, LLC (5818) (Case No. 25-20453-JNP); (v) C&D Brewing Company of Wilmington, LLC (4042) (Case No. 25-20454-JNP); (vi) C&D Brewing Company of Media, LLC (0706) (Case No. 25-20455-JNP); (vii) Iron Hill Brewery of Lehigh Valley, LLC (3431) (Case No. 25-20456-JNP); (viii) C&D Brewing Company of Chestnut Hill, LLC (3404) (Case No. 25-20457-JNP); (ix) Iron Hill Brewery of Columbia, LLC (3635) (Case No. 25-20458-JNP); (x) Iron Hill Brewery of Perimeter, LLC (0005) (Case No. 25-20459-JNP); (xi) C&D Brewing Company of Montgomeryville, LLC (9479) (Case No. 25-20460-JNP); (xii) Iron Hill Brewery of Eagleview, LLC (4703) (Case No. 25-20461-JNP); (xiii) C&D Brewing Company of Ardmore, LLC (0123) (Case No. 25-20462-JNP); (xiv) Iron Hill Brewery of Buckhead, LLC (1794) (Case No. 25-20463-JNP); (xv) Iron Hill Brewery of South Carolina, LLC (1851) (Case No. 25-20464-JNP); (xvi) C&D Brewing Company of Phoenixville, LLC (1313) (Case No. 25-20465-JNP); (xvii) Iron Hill Brewery of Newtown, LLC (6182) (Case No. 25-20466-JNP); (xviii) C&D Brewing Company of Pennsylvania, LLC (0585) (Case No. 25-20468-JNP); (xix) Iron Hill Brewery of Hershey, LLC (5290) (Case No. 25-20469-JNP); (xx) C&D Brewing Company of Huntingdon Valley, LLC (3213) (Case No. 25-20470-JNP); (xxi) Iron Hill Brewery of Rehoboth Beach, LLC (8467) (Case No. 25-20471-JNP); (xxii) Iron Hill Brewery East Market, LLC (9863) (Case No. 25-20472-JNP); (xxiii) Iron Hill Brewery, LLC (5042) (Case No. 25-20476-JNP).

**ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT
AND AUTHORIZING (A) THE PRIVATE SALE OF THE DEBTORS' RIGHT,
TITLE, AND INTEREST IN SUBSTANTIALLY ALL THE ASSETS ASSOCIATED
WITH CERTAIN OF THE DEBTORS' LOCATIONS, PURSUANT TO SECTION
363 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS, AND ENCUMBRANCES, AND (B) THE AGREEMENT WITH
THE BUYER REGARDING THE ALLOCATION OF OTHER LIQUIDATION
PROCEEDS; (II) APPROVING THE PROPOSED PROCEDURES RELATING TO
THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
<u>UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF</u>**

The relief set forth on the following pages, numbered two (2) through fifteen (15) is

**ORDERED**.

1

Upon the motion (the "Motion") of Andrew Sklar, in his capacity as the Chapter 7 trustee (the "Trustee" or "Seller") for the estates of the above-captioned debtors (collectively, the "Debtors"), filed on [●], seeking entry of an Order (this "Order") (i) approving the asset purchase agreement (the "Agreement")[2] by and between the Trustee and IH Restaurants LLC and its affiliate entities (the "Buyer"), which provides for (a) the private sale to Buyer of the Debtors' right, title, and interest in the Acquired Location Set 1 Assets free and clear of all liens, claims, interests, and encumbrances, pursuant to Section 363 of title 11 of the United States Code (the "Bankruptcy Code"), and (b) the Carve-Out of proceeds and related compromise set forth in the Agreement regarding the Liquidated Location Set 2 Assets, pursuant to Bankruptcy Rule 9019 (collectively, the "Sale Transaction"); (ii) approving procedures for, and authorizing, the potential assumption and assignment to Buyer of certain executory contracts and unexpired leases (each, a "Contract"), pursuant to Section 365 of the Bankruptcy Code; and (iii) granting related relief (the "Motion");[3] and the Court having reviewed the Motion and the Agreement; and the Court having conducted a hearing on [●], 2025 (the "Sale Hearing"); and the Trustee having provided adequate and sufficient notice of the Motion, the Sale Hearing, the Sale Transaction, the potential assumption and assignment of the Contracts, and the proposed Order; and any objections to the relief requested having been withdrawn, resolved, or overruled on the merits; and upon the record of the Sale Hearing and these Chapter 7 Cases; and after due deliberation,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, and if not the Motion, the Agreement, a copy of which is attached hereto as **Exhibit "A"**.

Bankruptcy Procedure (the "Bankruptcy Rules") made applicable to this proceeding, pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     **Jurisdiction, Venue, and Core Proceeding**.  The Court has jurisdiction to consider the Motion and the Sale Transaction, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a Final Order consistent with Article III of the U.S. Constitution.  Venue is proper in this District and in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409

C.     **Final Order**.  This Order constitutes a Final Order within the meaning of 28 U.S.C. § 158(a), and consistent with the definition of Final Order provided in the Agreement.  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), there is no just reason for delay and immediate effectiveness is warranted as set forth herein.

D.     **Notice**. As evidenced by the affidavits and certificates of service filed with the Court: (i) proper, timely, adequate, and sufficient notice of the Motion, the Agreement, the Sale Transaction, the Sale Hearing, the proposed assumption and assignment of the Contracts, and this Order has been provided by the Trustee; (ii) such notice was good, sufficient, and appropriate under the particular circumstances, and in compliance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rule 6004-3; and (iii) no other or further notice of the Motion, the Agreement, Sale Transaction, the Sale Hearing, or the proposed assumption and assignment of the Assumed Contracts is required.

E.     **Opportunity to Object**.  A fair and reasonable opportunity to object to, and be heard with respect to, the Motion and the Sale Transaction has been given to all interested Persons

3

(as defined in section 101 of the Bankruptcy Code) and entities including, but not limited to, the following: (i) all non-Debtor parties to the Assumed Contracts; (ii) all known parties who have expressed in interest in acquiring the Debtors' Assets; (iii) all parties who have requested notice in these Chapter 7 cases pursuant to Bankruptcy Rule 2002; (iv) all applicable federal, state, provincial, and local taxing and regulatory authorities; (v) all known parties holding or asserting a lien or other security interest in the Debtors' Assets; (vi) all of the Debtors' known creditors; and (vii) all parties listed on the Debtors' creditor matrices.

F.    **Sound Business Purpose; Private Sale**.    The Trustee, on behalf of the Debtors' estates, has demonstrated good, sufficient, and sound business purposes and justifications for approval of the Agreement and Sale Transaction and for entering into the Agreement. The Trustee's entry into and performance under the Agreement (i) constitutes a sound and reasonable exercise of the Trustee's business judgment; (ii) provides value to and is beneficial to the Debtors' estates and is in the best interests of the Debtors' estates and their stakeholders; and (iii) is reasonable and appropriate under the circumstances. Business justifications for the Sale Transaction include, but are not limited to, the following: (a) the Agreement constitutes the highest or otherwise best offer received for the Acquired Location Set 1 Assets; (b) the Agreement presents the best opportunity to maximize the value of the Acquired Location Set 1 Assets and avoid decline and devaluation of the Acquired Location Set 1 Assets; (c) the Carve-Out provided for in the Agreement with respect to proceeds concerning the Liquidated Location Set 2 Assets ensures a recovery for general unsecured creditors, where such recovery might otherwise not have been possible; (d) unless the Sale Transaction is concluded expeditiously, as provided for pursuant to the Agreement, certainty of consummating the Sale Transaction will be compromised and

recoveries to creditors may be materially diminished; and (e) the value of the Debtors' estates will be maximized through the sale of the Acquired Location Set 1 Assets pursuant to the Agreement.

G.    **Highest or Otherwise Best Offer; Fair Consideration**.    The Agreement constitutes the highest or otherwise best offer attainable for the Acquired Location Set 1 Assets under the circumstances and provides fair and reasonable consideration, including (a) a credit bid in the amount of $12,000,000 pursuant to section 363(k) of the Bankruptcy Code, (b) the Buyer's payment of all Cure Amounts and Carrying Costs as set forth in the Agreement, (c) additional cash consideration equal to the fair market value of the Delaware liquor licenses as provided in the Agreement, and (d) Buyer's assumption of the Assumed Liabilities set forth in the Agreement. Further, the Agreement provides for the following Carve-Out for the benefit of the estates: (i) ninety percent (90%) of all sale proceeds from the liquidation and sale of all inventory and equipment located in Location Set 2, and (ii) forty percent (40%) of the proceeds with respect to the remaining Liquidated Location Set 2 Assets and other Split Assets (as set forth in greater in the Agreement), with a guaranteed minimum recovery of at least $400,000.00 on account of such proceeds.

H.    **Good Faith; Section 363(m)**.    The Agreement and the transactions contemplated thereunder were negotiated, proposed, and entered into by the Trustee and Buyer without collusion, in good faith, and from arm's-length bargaining positions.  Buyer is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and is entitled to the protections thereof.  Neither the Trustee nor Buyer has engaged in any conduct that would permit the Sale Transaction to be avoided or for costs or damages to be imposed under Section 363(n) of the Bankruptcy Code.

I.    **No Fraudulent Transfer**.  The consideration provided by the Buyer pursuant to the Agreement for its purchase of the Acquired Location Set 1 Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession, and the District of Columbia.

J.    **Section 363(k) Credit Bid**. The Buyer, as the holder and assignee of the Debtors' prepetition Secured Debt, is authorized under section 363(k) to credit bid up to the full amount of its allowed Secured Claim, and the consideration structure set forth in the Agreement, including the $12,000,000.00 Credit Bid, is proper and approved.

K.    **Sale Free and Clear of Interests; Satisfaction of Section 363(f)**.  The Trustee may sell the Acquired Location Set 1 Assets free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever (collectively, "Interests"), other than the Assumed Liabilities and any permitted liens expressly set forth in the Agreement, because one or more of the standards set forth in section 363(f)(1)–(5) has been satisfied.  Any holders of Interests who did not object or withdrew their objections are deemed to have consented to the Sale Transaction, pursuant to section 363(f)(2).  All Interests will attach to the net sale proceeds with the same validity, priority, and extent as existed immediately prior to the sale, subject to all defenses.

L.    **No Successor or Transferee Liability**.  Buyer is not a successor to the Debtors, and the Sale Transaction does not amount to a consolidation, merger, or de facto merger.  Buyer shall not, by reason of the Sale Transaction, be deemed to have assumed or be liable for any Interests or liabilities of the Debtors or their estates of any kind or nature whatsoever, whether known or unknown, choate or inchoate, fixed, contingent, or otherwise, except for the Assumed

6

Liabilities expressly set forth in the Agreement.  The Court finds it necessary to approve the Sale

Transaction free and clear of any claims based on any theory of successor or transferee liability to

maximize value.

M.    **Validity of Transfer**.  Upon Closing, the transfer of the Acquired Location Set 1

Assets to Buyer will be a legal, valid, binding, and effective transfer, vesting Buyer with all right,

title, and interest of the estates in the Acquired Location Set 1 Assets, free and clear of all Interests

other than the Assumed Liabilities and permitted liens set forth in the Agreement.

N.    **Assumption and Assignment of Executory Contracts and Unexpired Leases**.

The potential assumption by the Trustee and assignment to Buyer of the Contracts is integral to

the Sale Transaction, in the best interests of the estates, and a proper exercise of the Trustee's

business judgment.  The Trustee has satisfied the requirements of Section 365 of the Bankruptcy

Code, including providing Counterparties with notice of proposed Cure Amounts and Buyer

having provided adequate assurance of future performance within the meaning of Sections 365(b)

and 365(f).  The Cure Amounts are deemed to be the entire cure obligation due and owing under

the Contracts, pursuant to or under Section 365(b) of the Bankruptcy Code.

O.    **Assumption and Assignment Procedures**.  The Assumption and Assignment

Procedures set forth in the Motion and reflected in this Order provide due and sufficient notice and

a fair opportunity to object.  The Agreement's designation window of forty-five (45) days after

entry of this Order for Buyer to remove any Contracts from the list of Contracts to be assumed is

reasonable under the circumstances.

P.    **Potential Contract Assumption Notice**.  As evidenced by the certificates of

service filed with this Court, the Trustee has served notice of the potential assumption and

assignment of the Contracts and of the related proposed Cure Amounts upon each Counterparty to

the Contracts (the "<u>Potential Contract Assumption Notice</u>").  The service of the Potential Contract Assumption Notice was good, sufficient, and appropriate under the Bankruptcy Rules and the Local Rules, and no further notice need be given with respect to the proposed Cure Amounts for the assumption and assignment of the Contracts.  All Counterparties to the Contracts have had a reasonable opportunity to object both to the proposed Cure Amounts listed on the Potential Contract Assumption Notice and to the assumption and assignment of the Contracts to Buyer.  No defaults exist in the Debtors' performance under the Contracts as of the date of this Order other than the failure to pay the Cure Amounts or defaults that are not required to be cured.

Q.    **Rule 9019 Settlement Approval**.  The Carve-Out of proceeds and related compromise in the Agreement concerning the Liquidated Location Set 2 Assets, including the split between Seller's Proceeds and the Buyer's Proceeds, and the guaranteed minimum recovery of $400,000 to the estates, is fair, reasonable, and in the best interests of the estates and their creditors, and is approved pursuant to Bankruptcy Rule 9019 after consideration of the relevant factors.

R.    **Prompt Consummation; Waiver of Stays**.  Time is of the essence in consummating the sale and related transactions.  The Trustee has demonstrated compelling circumstances for immediate effectiveness of this Order and a waiver of the stays provided by Bankruptcy Rules 6004(h) and 6006(d).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.    **Motion is Granted**.  The Motion and the relief requested therein is granted as set forth herein.

2.    **Objections Overruled**.  All objections to the relief requested that have not been withdrawn, waived, or settled are overruled with prejudice.

3.    **Approval of the Agreement; Consummation of Sale Transaction**.  The Agreement and all of the terms and conditions thereof are approved in all respects.  The Trustee is

authorized to enter into and perform under the Agreement and all other documents necessary or appropriate to consummate the Sale Transaction contemplated thereby, including without limitation, executing, delivering, implementing, and performing all of the Trustee's obligations and taking all actions reasonably necessary to effectuate the sale and the assumption and assignment of the Contracts, all without further order of the Court.  The Sale Transaction authorized herein shall be of full force and effect, notwithstanding any Debtors' lack of, or purported lack of, good standing in any jurisdiction.

4.    **Sale Free and Clear; Transfer Mechanics**.  Pursuant to Sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, the Acquired Location Set 1 Assets shall be transferred to Buyer, free and clear of all Interests, with such Interests to attach solely to the net sale proceeds with the same validity, priority, extent, and effect as existed immediately prior to Closing, subject to all defenses.  The transfer shall be deemed a legal, valid, binding, and effective transfer of the Acquired Location Set 1 Assets to Buyer.

5.    All persons and entities that are in possession of any of the Acquired Location Set 1 Assets are directed to surrender possession to Buyer at Closing, or as otherwise requested by Buyer.  All persons and entities are enjoined and restrained from taking any action to adversely affect or interfere with the transfer of the Acquired Location Set 1 Assets to Buyer in accordance with the Agreement and this Order.

6.    This Order shall be effective as a determination that, as of Closing, (a) no Interests other than the Assumed Liabilities expressly set forth in the Agreement shall be assertable against Buyer or any of the Acquired Location Set 1 Assets, and (b) all Interests are released as to the Acquired Location Set 1 Assets and attach to the net proceeds.  This Order is self-executing and may be relied upon as a recordable instrument of transfer.  Each and every federal, state, and local

governmental agency or department is directed to accept any and all documents and instruments necessary to effectuate the transactions contemplated by the Agreement and this Order.

7.      If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests against the Debtors or the Acquired Location Set 1 Assets has not delivered to the Trustee, prior to Closing, appropriate releases or termination statements, then (a) the Trustee is authorized to execute and file such releases or termination statements on behalf of such person or entity with respect to the Acquired Location Set 1 Assets, and (b) Buyer is authorized to file and record certified copies of this Order, which shall constitute conclusive evidence of the release of all such Interests in or against the Acquired Location Set 1 Assets.

8.      The Agreement and the Sale Transaction contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

9.      **Credit Bid; Consideration**.  Buyer is authorized to credit bid $12,000,000.00 as set forth in the Agreement, pursuant to section 363(k) of the Bankruptcy Code, and to pay the other components of consideration as provided in the Agreement, including all Cure Amounts and Carrying Costs and the cash consideration for the Delaware liquor licenses.

10.      **No Successor or Transferee Liability; Injunction**.  Except for the Assumed Liabilities expressly set forth in the Agreement, or as otherwise expressly provided in this Order, Buyer and its affiliates, successors, and assigns shall have no liability for any Interests or liabilities of the Debtors or their estates, including, without limitation, any liabilities arising under any employment, pension, ERISA, environmental, product liability, antitrust, tax, labor, WARN, or other law, or any theory of successor or transferee liability, de facto merger, or substantial continuity.

11.     Effective upon Closing, all persons and entities are permanently enjoined and restrained from commencing or continuing any action or proceeding, enforcing any judgment, creating or enforcing any lien or encumbrance, or asserting any setoff, subrogation, or recoupment with respect to any Interests or liabilities against Buyer or its assets (including the Acquired Location Set 1 Assets) that relate to the Debtors or the Acquired Location Set 1 Assets prior to Closing.

12.     **Assumption and Assignment of Assumed Contracts**. The Trustee is authorized to assume and assign the Contracts to Buyer in accordance with Sections 365(a), (b), and (f) of the Bankruptcy Code and the Agreement, free and clear of all Interests, other than those expressly assumed by Buyer.  Upon Buyer's election to assume any Contract (each, an "Assumed Contract"), provided that such election is made prior to 45-days from the entry of this Order (the "Assumption and Assignment Deadline"), and subject to payment of the applicable Cure Amounts, the Assumed Contracts shall be deemed validly assumed by the Trustee and assigned to Buyer, and the estates shall be relieved of any further liability thereunder, pursuant to Section 365(k) of the Bankruptcy Code.

13.     **Cure Amounts**. The Cure Amounts set forth in the Potential Contract Assumption Notice (as may be supplemented in the Closing Contract Assumption Notice (as defined in the Motion and below), or any subsequent notice, if any) are approved and shall be paid in accordance with the Agreement; provided, however, that Buyer will be permitted to decline to assume any such Contract and pay any relevant Cure Amounts until the expiration of the Assumption and Assignment Deadline.  Payment of the Cure Amounts shall (a) effect a cure of all defaults existing under the Assumed Contracts, (b) compensate the Counterparties for any actual pecuniary loss

resulting from such defaults, and (c) together with Buyer's performance, constitute adequate assurance of future performance under such Assumed Contracts.

14.     **Adequate Assurance**.    Buyer has provided adequate assurance of future performance under the Assumed Contracts within the meaning of Sections 365(b)(1)(C) and 365(f)(2)(B).  Any anti-assignment provisions in the Assumed Contracts that purport to prohibit, restrict, or condition assignment are unenforceable under section 365(f).

15.     **Assumption Objection; Dispute Resolution**.  If no timely objection (each, and "Assumption Objection") was filed by a Counterparty to the assumption of any applicable Contract listed on the Potential Contract Assumption Notice and the related Cure Amount, if any, the Trustee is fully authorized to assume and assign such Contract to Buyer, and the listed Cure Amount shall be binding.  If an Assumption Objection was timely filed solely as to Cure Amount, the Trustee may, with the consent of Buyer, proceed to assume and assign the applicable Contract, provided that Buyer agrees to pay the non-disputed portion of the Cure Amount asserted by the Counterparty, pending resolution of the dispute by the Court or by agreement of the parties.

16.     **Post-Closing Assumption Procedures**.  As soon as practicably possible following the Closing, the Trustee shall file and serve upon each affected Counterparty a revised notice (the "Closing Contract Assumption Notice") setting forth the complete list of Assumed Contracts as of the date of the Closing, which will reflect any adjusted Cure Amounts agreed to following the filing of the Potential Contract Assumption Notice or the resolution of an applicable Assumption Objection; provided, however, that Buyer reserves all rights until the expiration of the Assumption and Assignment Deadline to determine whether any additional Contracts previously listed on the Potential Contract Assumption Notice should be added to the list of Assumed Contracts.

17.     To the extent Buyer elects to assume any additional Contracts previously listed on

the Potential Contract Assumption Notice following the filing of the Closing Contract Assumption

Notice, promptly after the expiration of the Assumption and Assignment Deadline, the Trustee

will file and serve upon each affected Counterparty a notice (the "Final Contract Assumption

Notice") setting forth any additional Contracts to be deemed Assumed Contracts, which will reflect

any adjusted Cure Amounts agreed to following the filing of the Potential Contract Assumption

Notice or the resolution of an applicable Assumption Objection and the effective date of

assumption for each additional Assumed Contract.  The Trustee and Buyer will not be permitted

to add or remove any additional Contracts from the Assumed Contracts list after the expiration of

the Assumption and Assignment Deadline.  For the avoidance of doubt, the failure to include any

Contract on the final list of Assumed Contracts included with the Closing Contract Assumption

Notice or the Final Contract Assumption Notice (if any) does not mean that such Contract is

deemed rejected by the Trustee, and the Trustee reserves all rights with respect to any such

Contracts not assumed by Buyer.

18.     **Ipso Facto Clauses**.  No Counterparty to any Assumed Contract may declare a

default, accelerate, terminate, or modify any term or condition, or impose any penalty or fee, based

on the Debtors' insolvency or bankruptcy, the assignment of the Assumed Contracts, or the

consummation of the Sale Transaction.

19.     **Section 365(n)**.  Nothing in this Order limits or shall be construed to limit any

intellectual property licensee's rights under section 365(n) of the Bankruptcy Code.  To the extent

applicable, the sale and transfer of the Acquired Location Set 1 Assets is subject to, and not free

and clear of, any rights of any intellectual property licensee under section 365(n).

20.      **Governmental Approvals; Police Powers Preserved**.  To the maximum extent permitted by applicable nonbankruptcy law, and as provided in the Agreement, Buyer is authorized to operate under and benefit from any licenses, permits, registrations, and governmental approvals (collectively, "Licenses") of the Debtors relating to the Acquired Location Set 1 Assets, pending transfer or reissuance as permitted by applicable law.  Subject to Section 525 of the Bankruptcy Code and applicable nonbankruptcy law, no governmental unit may revoke or suspend any such License on account of the filing of these Chapter 7 Cases or the consummation of the Sale Transaction.  Nothing in this Order or the Agreement nullifies, precludes, or enjoins the enforcement of any valid police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after Closing.

21.      **Approval of Rule 9019 Allocation and Related Relief**.  The Care-Out and compromise set forth in the Agreement with respect to the Liquidated Location Set 2 Assets, including the split between Seller's Proceeds and the Buyer's Proceeds, and the $400,000 minimum guaranteed recovery to the estates, is approved pursuant to Bankruptcy Rule 9019.  The Trustee is authorized to implement and distribute proceeds in accordance with the Agreement without further order of the Court.

22.      **Immediate Effectiveness; Waiver of Stays**.  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), or any other applicable rule, this Order shall be effective and enforceable immediately upon entry and the fourteen-day stays are waived.

23.      **Binding Effect**.  This Order and the Agreement shall be binding in all respects upon the Debtors, their estates, all creditors, all parties in interest, the Trustee, Buyer and its affiliates, successors and assigns, and any trustee, examiner, receiver, or other fiduciary appointed

in these Chapter 7 Cases or upon conversion, dismissal, or closure of these Chapter 7 Cases, and shall not be subject to rejection or avoidance.

24.     **Conflicts**.    To the extent there is any conflict between this Order and the Agreement, this Order shall control.  To the extent there is any conflict between this Order and any prior order of the Court, this Order shall control.

25.     **No Stay Pending Appeal**.  The Sale Transaction authorized herein is undertaken by Buyer in good faith within the meaning of section 363(m).  If any party appeals this Order, it shall not affect the validity of the Sale Transaction to Buyer, unless this Order is stayed pending appeal before Closing.

26.     **Reservation of Rights**.  Except as expressly provided herein, nothing in this Order shall be deemed (a) an admission as to the validity of any claim or lien, (b) a waiver of the Trustee's or any other party's rights to object to or contest any claim or lien, (c) a promise to pay any claim, or (d) a waiver or limitation of any rights of the Trustee or the estates under the Bankruptcy Code or other applicable law.

27.     **Retention of Jurisdiction**.  This Court retains exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of this Order and the Agreement, including resolving any disputes concerning the sale, the assumption and assignment of the Contracts, the allocation of proceeds, and the protection of Buyer under section 363(m).

# Exhibit "A"

**Asset Purchase Agreement**

## ASSET PURCHASE AGREEMENT

This Agreement (this "***Agreement***") is made this 27 day of October, 2025 (the "***Effective Date***"), by and between Andrew Sklar, solely in his capacity as Chapter 7 Trustee ("***Seller***") for the estates of Iron Hill Brewery, LLC, a Delaware limited liability company, and its other Debtor affiliates (collectively, the "***Debtors***") and IH Restaurants LLC and its designees  as set forth on Schedule 3 (the "***Designee Schedule***") attached hereto (hereinafter "***Buyer***").

### RECITALS

**WHEREAS**, Debtors are in the business of operating a brewery and restaurant chain focusing on craft beer and food (the "***Business***") from nineteen different locations.

**WHEREAS**, Debtors filed voluntary petitions for relief under Chapter 7, Title 11, United States Code, as amended (the "***Bankruptcy Code***") on October 3, 2025 and October 4, 2025 (the "***Petition Date***") in the United States Bankruptcy Court, District of New Jersey (the "***Bankruptcy Court***"), Case Number BK-25-20476 (the "***Bankruptcy Case***");

**WHEREAS**, Seller desires to sell, transfer, convey, assign and deliver the Acquired Location Set 1 Assets (as hereinafter defined), and Buyer desires to purchase, take delivery of and acquire such Acquired Location Set 1 Assets, and to assume such Assumed Liabilities, in each case on an "AS IS, WHERE IS" basis, except for the representations and warranties expressly set forth in Section 10 below and upon the terms and subject to the conditions set forth herein; and

**WHEREAS**, the transactions contemplated by this Agreement (the "***Transactions***") will be consummated in accordance with Sections 105(a), 363, 365 and other applicable provisions of the Bankruptcy Code and pursuant to authorization to be granted by the Bankruptcy Court (the "***Sale***"), as provided in a sale order (the "***Sale Order***").

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual representations, warranties, covenants and promises contained herein, the adequacy and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### AGREEMENT

1.    **Purchase and Liquidation of Assets; Purchase of Insurance**

(a)    **Acquired Location Set 1 Assets.**  Subject to the terms and conditions of this Agreement and the Sale Order, at the Closing (as defined herein), Buyer shall purchase, and Seller shall sell all right, title and interest of Seller in and to the Acquired Location Set 1 Assets free and clear of all liens, encumbrances, claims, security interests and the like.  "***Acquired Location Set 1 Assets***" acquired hereunder shall mean all of the assets, properties, goodwill, rights and claims of Seller associated with the twelve (12) locations set forth on Schedule 1(a) hereto (the "***Location Set 1***") or such subset of Location Set 1 as Buyer agrees in writing before the date that is forty five (45) calendar days after the Sale Order is entered (the "***Acquired Location Set 1***"), including, but not limited to the items below that are associated with the Acquired Location Set 1, but excluding the Excluded Assets set out in Section 1(e) below:

1

(i)     all rights of Seller under the executory contracts and unexpired leases of Seller not previously rejected pursuant to Section 365 of the Bankruptcy Code that are specifically listed on <u>Schedule 2</u> (collectively, the "***Assumed Contracts***");[1] provided, however, that Buyer may advise Seller of any deletions to the Assumed Contracts within forty five (45) calendar days after the Sale Order is entered.

(ii)     all inventory and work-in-process related to the Business located in Acquired Location Set 1;

(iii)     all equipment, machinery, office equipment and other tangible personal property used or usable in the Business located in Acquired Location Set 1;

(iv)     All the intellectual property used by the Debtors;

(v)     The liquor licenses associated with Location Set 1; and

(vi)     All cash and cash equivalents.

(b)     **Location Set 1 Carrying Costs and Cure Amounts.**

(i)     Buyer agrees to pay all carrying costs, if any, associated with operating each location that is part of Location Set 1 incurred from the date of the Bankruptcy Court Sale hearing through the date on which Buyer notifies Seller in writing whether Buyer will purchase the assets associated with the particular Debtor location, including, without limitation all costs for operation and for all unpaid rent, fees, and other applicable sums due and unpaid under any Assumed Contract (collectively, the ***"Carrying Costs"***);

(ii)     Buyer agrees to pay all cure costs for all unpaid rent, fees, and other applicable sums due and unpaid under any real estate leases, equipment leases and other Assumed Contracts of Debtors that Buyer assumes and that are associated with the Acquired Location Set 1, excluding all Carrying Costs previously paid by Buyer pursuant to subsection 1(b)(ii) above (collectively, the "***Cure Amounts***").

(c)     **Liquidation of Location Set 2 Assets**. Seller will liquidate substantially all assets of the Debtors associated with all locations of the Debtors, other than those locations in Acquired Location Set 1, including, without limitation, the locations set forth on <u>Schedule 1(b)</u> (the "***Location Set 2***" and, together with the Acquired Location Set 1, the "***Debtor Locations***") (the "***Liquidated Location Set 2 Assets***" and, together with the ***Acquired Location Set 1 Assets***, the "***Assets***"), by auction or otherwise, including, without limitation, all associated equipment and liquor licenses.

(d)     **Insurance**.  Promptly after the date hereof, using the funds provided for in Section 6(b)(ii)(C), Seller shall purchase general liability insurance and any other insurance

---

[1] The contracts and leases listed on <u>Schedule 2</u> will be selected from the list of contracts and leases included on the Potential Contract Assumption Notice that is filed with the Bankruptcy Court and served on the applicable counterparties.

appropriate for all the Debtor Locations; provided, however, that Buyer shall purchase property insurance for all properties associated with Location Set 1.

(e)     **Excluded Assets.** The Acquired Location Set 1 Assets shall not include the Excluded Assets and Buyer agrees that Buyer has no lien or security interest on any of the assets listed in Section 1(e)(i)-(ii), (iv)-(vii), (ix), and (x), or has otherwise agreed for purposes of this Agreement to provide to the estate, as the case may be. The term "*Excluded Assets*" means the following assets associated with all Debtor Locations:

(i)     Certificates of Formation, seals, unit certificate books, minute books, stock ledgers, and other documents relating solely to the organization, maintenance and existence of the Debtors, as limited liability companies;

(ii)     any legal or beneficial interests in the shares of the Debtors or Seller or in equity that the Debtors or Seller owns;

(iii)     all accounts, pre-paid expenses, advance payments, prepayments, security deposits, deferred charges, letters of credit and other deposits included in the pre-paid assets or rights of payment, in each case, of the Debtors or Seller, and any claim, cause of action, remedy or right related to the foregoing (for the avoidance of doubt, excluding those claims or causes of action discussed in Section 1(e)(iv)), except for all deposits and prepayments directly attributable to Location Set 1 that Buyer is acquiring and has a lien on;

(iv)     all claims or causes of action relating to the Debtors or Seller and their bankruptcy estates, including actions under Chapter 5 of the Bankruptcy Code and/or any other applicable federal or state law, and all proceeds and rights to proceeds therefrom;

(v)     all commercial tort claims and D&O claims of Debtors;

(vi)     all rolling stock of Debtors;

(vii)     any (i) books and records that Debtors or Seller are required by law to retain, provided that Buyer shall receive a copy thereof; (ii) duplicate copies of any records as are necessary to enable Debtors or Seller to file tax returns and reports; and (iii) any books and records relating to the organization, ownership, existence or corporate record keeping of the Debtors or Seller;

(viii)     any insurance policies or rights to proceeds thereof, including, without limitation, relating to the assets, properties, business or operations of Debtors or Seller and the Debtor Locations, but excluding items set forth in Subsection 1(e)(v), insurance proceeds relating to the claim associated with the damage at the Center City, Philadelphia, PA location, and all insurance proceeds directly attributable to Location Set 1 that Buyer is acquiring and has a lien on  (all assets set forth in Subsection 1(e)(iii) and (viii) shall be referred to as the "*Split Assets*");

(ix)     all tax losses and tax loss carry forwards of the Debtors or Seller and rights to receive refunds, credits and credit carry forwards with respect to any taxes of the Debtors or Seller

3

(x)       all rights of the Debtors or Seller under this Agreement and the other agreements and instruments executed and delivered in connection with this Agreement (the "***Transaction Documents***").

2.       **Closing**. Title to all of the Acquired Location Set 1 Assets shall pass to Buyer upon the closing of the transaction (the "Closing"), which must occur within two (2) business days after all conditions contained in Section 8 hereof have been met (the "***Closing Date***").  Seller recognizes and acknowledges that the value of the Acquired Location Set 1 Assets is subject to diminution. As such, time is of the essence to the Closing on the transactions contemplated by this Agreement.

3.       **As is, Where is**. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPLICITLY PROVIDED IN THIS AGREEMENT, THE ACQUIRED LOCATION SET 1 ASSETS ARE BEING SOLD AND TRANSFERRED TO BUYER "AS IS, WHERE IS", AND SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATED TO THE ACQUIRED LOCATION SET 1 ASSETS.  WITHOUT LIMITING THE FOREGOING, SELLER HEREBY DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ACQUIRED LOCATION SET 1 ASSETS.   BUYER FURTHER ACKNOWLEDGES THAT BUYER SHALL CONDUCT AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE ACQUIRED LOCATION SET 1 ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT, BUYER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS.

4.       **Buyer Agreements**. Upon the terms and subject to the conditions of this Agreement, Buyer agrees:

(a)       To assume only the following liabilities of Seller, in each case, except to the extent any of such liabilities are Excluded Liabilities (as defined herein) (the "***Assumed Liabilities***"):

(i)       All liabilities relating to or arising from the ownership of the Acquired Location Set 1 Assets after the Closing Date or at such earlier time as is otherwise set forth herein.

(ii)       All Carrying Costs and Cure Amounts due hereunder in accordance with the terms hereunder.

(b)       Notwithstanding any other provision of this Agreement, Buyer shall not assume or be liable for any liabilities of Seller or Debtors, of any kind (whether or not asserted, accrued, contingent, at law or in equity or otherwise (including any liability based on successor liability theories), scheduled or evidenced by a filed proof of claim or other form of writing evidencing such claim billed in the Bankruptcy Cases, secured, unsecured, priority or administrative), other than the Assumed Liabilities (the "***Excluded Liabilities***").

(c)       To the maximum extent permitted by the Bankruptcy Code, the Assumed Contracts shall be assumed by Seller and assigned to Buyer at Closing, or such longer period as is

4

set forth herein, pursuant to Section 365 of the Bankruptcy Code. Notwithstanding anything in this Agreement to the contrary, this Agreement shall not constitute an agreement to assign any Assumed Contract that, after giving effect to the provisions of Section 365 of the Bankruptcy Code, is not assignable or transferable without the consent of any Person, other than the Seller and Buyer, to the extent that such consent shall not have been given prior to the Closing; provided, however, that Seller shall use, whether before or after the Closing, reasonable efforts to obtain all necessary consents to the assignment and transfer thereof. The term "Order" means any award, decision, decree, order, directive, injunction, judgment or consent of or entered, issued, made or rendered by the Bankruptcy Court.

5.    **Exclusions**. For the avoidance of doubt, Seller shall retain all rights to its receivables as of the Closing Date. Seller shall also retain all Bankruptcy Code Chapter 5 causes of action and all other Excluded Assets, including proceeds thereto.  Regarding the receivables, Buyer and Seller hereby recognize and acknowledge that the origin of these receivables is the customer contracts.  As such, Seller covenants that it will collect such receivables in a reasonable fashion. Buyer understands that these receivables are of value to Seller, and Buyer covenants that it will not take any action that will in anyway discourage the payment of such receivables.

6.    **Purchase Price; Sale Proceeds Split**

(a)    **Purchase Price for Locations Set 1 Assets:**  The consideration for the Acquired Location Set 1 Assets shall be (i) a cancellation in the amount of Twelve Million Dollars ($12,000,000) of Debtors' outstanding loan from Buyer, (ii) Buyer's payment of all Cure Amounts and Carrying Costs, (iii) additional cash consideration to be paid by Buyer to the Seller for acquisition of the liquor license associated with Debtors' Delaware locations, equal in sum to the current fair market value of such liquor license, which is $1,000 per license, and (iv) the assumption of the Assumed Liabilities (collectively, the "***Location Set 1 Purchase Price***").

(b)    **Sale Proceeds for Location Set 2 Assets**:

(i)    Seller will receive and keep the following sale proceeds (collectively, the "***Seller's Proceeds***"):

(A)    all sale proceeds received from the liquidation and sale of the liquor licenses for the New Jersey locations of the Debtors and for the Excluded Assets (other than the Split Assets).  For the avoidance of doubt, Seller will not keep any insurance proceeds, deposits, and prepayments directly attributable to Location Set 1 that Buyer is acquiring and has a lien on.

(B)    ninety percent (90%) of all sale proceeds received from the liquidation and sale of inventory and equipment located in Location Set 2.

(C)    forty percent (40%) of all sale proceeds received from the liquidation and sale of the following assets (other than liquidation of the assets set forth in Section 6(b)(i)(A) and

5

(B) above, which shall be governed by Section 6(b)(i)(A) and (B) above): (i) all Liquidated Location Set 2 Assets, (ii) all Split Assets, and (iii) any other Debtor collateral not addressed in this Section 6(b)(i). If Seller receives less than an aggregate of $400,000 for the liquidation of the assets set forth in this Section 6(b)(i)(C), Buyer shall pay such shortfall to Seller promptly upon request.

(ii)    Buyer will receive (collectively, the "***Buyer's Proceeds***"):

(A)    all sale proceeds received from the liquidation and sale of the liquor licenses for all Debtor Locations other than the New Jersey locations.

(B)    ten percent (10%) of all sale proceeds received from the liquidation and sale of inventory and equipment located in Location Set 2.

(C)    All cash and cash equivalents associated with the Debtor Locations other than $10,000 that Seller can use to purchase liability insurance.

(D)    sixty percent (60%) of all sale proceeds received from the liquidation and sale of all Liquidated Location Set 2 Assets, Split Assets, and any other collateral not addressed herein, excluding the Seller's Proceeds, which Seller will keep in their entirety (other than liquidation of the assets set forth in Section 6(b)(ii)(A) above, which shall be governed by Section 6(b)(ii)(A) above). The sum that Buyer will receive under Sections 6(b)(ii)(B)-(D) shall be capped at the remaining secured claim of Buyer after deducting the credit bid.

(iii)    Buyer will receive on account of its deficiency claim its pro rata distribution made by Seller to unsecured creditors.

7.    **<u>Reserved</u>**.

8.    **<u>Closing Conditions</u>**. The asset purchase and sale contemplated by this Agreement is expressly subject to each of the following conditions:

(a)    The execution and delivery of a signed copy of this Agreement by Buyer, Debtors and Seller.

(b)    Buyer's delivery of the Location Set 1 Purchase Price to Seller at Closing and payment of all Carrying Costs and Cure Amounts.

6

(c)    The representations and warranties of Seller contained in Section 10 of this Agreement that are qualified as to materiality or material adverse effect shall be true and correct, and the representations and warranties of Seller, on behalf of the Debtors, contained in this Agreement that are not so qualified shall be true and correct in all material respects, in each case as of the date of this Agreement and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date, in which case as of such earlier date; provided, however, Buyer understands and acknowledges that this purchase and sale is made on an "as is" "where is" basis, subject to the representations in Section 10.

(d)    No temporary restraining order, preliminary or permanent injunction or other judgment or order issued by any court of competent jurisdiction or other statute, law, rule, legal restraint or prohibition (collectively, "***Restraints***") shall be in effect enjoining, restraining, prohibiting or preventing the consummation of the Sale or otherwise making the consummation of the Sale illegal.

(e)    The Bankruptcy Court shall have entered the Sale Order in form and substance satisfactory to Buyer in its reasonable discretion and which shall be a Final Order. The term "Final Order" means any order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state, commonwealth, or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended in any manner that is materially adverse to Buyer and as to which (a) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (b) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken on granted. Notwithstanding the foregoing, nothing in this Agreement shall preclude Buyer from consummating the Transactions contemplated herein if Buyer, in its sole and absolute discretion, waives the requirement that the Sale Order shall have become a Final Order.  No notice of such waiver of this or any other condition to the Closing need be given except to Seller, it being the intention of the parties hereto that Buyer shall be entitled to, and is not waiving, the protections of Bankruptcy Code Section 363(m), the mootness doctrine and any similar statute or body of law if the Closing occurs in the absence of the Sale Order being a Final Order.

(f)    Buyer and Seller shall have received all necessary regulatory and governmental approvals with respect to the Sale and the Transactions contemplated hereunder and all waiting periods applicable to such approvals shall have expired.

(g)    Seller shall have performed in all material respects all obligations required to be performed by it under this Agreement at or prior to the Closing Date.

(h)    There shall not be any pending or threatened litigation that could reasonably be expected to result in any Restraint having any of the effects set forth in Section 8(d).

(i)    Compliance with all terms and conditions contained herein and approval by the Bankruptcy Court.

7

(j)    Delivery of all required documents set forth in Sections 8 and 9.

(k)    No finders' fee, broker or other fee shall be payable by Buyer.

(l)    Promptly after signing the Sale Agreement, Buyer shall buy and provide to Seller evidence of property insurance for all properties associates with Location Set 1. Seller shall purchase general liability insurance and any other insurance appropriate for all Debtor Locations using the funds provided for in Section 6(b)(ii)(C).

9.    **Closing Deliveries**. At Closing, Seller shall deliver to Buyer:

(a)    Bill of Sale and Assignment and Assumption Agreement to be prepared by Buyer; and

(b)    Bankruptcy Court Order approving this Agreement.

10.    **Seller Representations**. Seller represents and warrants to Buyer as follows:

(a)    Except for such authorization as is required by the Bankruptcy Court, Seller is the duly appointed Chapter 7 Trustee for the Debtors.

(b)    Seller has, or will have upon entry of the Sale Order, the unrestricted power and right to sell, assign, deliver all Acquired Location Set 1 Assets free and clear of all claims, liens, and encumbrances of whatever nature. Subject to the Sale Order, at the Closing, Buyer will obtain title to the Acquired Location Set 1 Assets free and clear of all claims, liens, and encumbrances of whatever nature. The property included in the Acquired Location Set 1 Assets will be sold to Buyer at the Closing in its "as is" "where is" condition.

(c)    Seller has not authorized any person to act as broker, finder, banker, consultant, intermediary or in any other similar capacity that would entitle such person to any investment banking, brokerage, finder's or similar fee payable by Buyer in connection with the Transactions contemplated by this Agreement or any of the other Transaction Documents.

11.    **Buyer Representations**. Buyer represents to Seller that:

(a)    Buyer is a Limited Liability Company duly formed, validly existing and in good standing under the laws of Delaware. Buyer has full power and authority to enter into and perform this Agreement.

(b)    The execution and performance of this Agreement by Buyer will not (i) result in a material breach of, or constitute a material default under, any order, judgment, or decree or any agreement or other instrument to which Buyer is a party or by which Buyer may be bound or (ii) constitute a violation of any law or regulation or enforcement of which would have a material adverse effect on Buyer's ability to perform its obligations under this Agreement. The execution and performance of this Agreement by Buyer has been duly authorized by all necessary corporate action of Buyer and this Agreement constitutes the valid and binding obligation of Buyer enforceable against in accordance with its terms.

8

(c)    There are no judicial or administrative actions, proceedings, or investigations pending or threatened that question the validity of this Agreement or any action taken or to be taken by Buyer in connection with this Agreement that, if adversely determined, would have a material adverse effect on Buyer's ability to perform its obligations under this Agreement.

12.    **Termination**.

(a)    <u>Grounds for Termination</u>.  This Agreement may be terminated at any time prior to the Closing:

(i)    by mutual written agreement of Seller and Buyer;

(ii)    by Seller or Buyer, if the Closing shall not have been consummated on or before December 31, 2025 or such other date as the parties here to may agree to in writing (the "***End Date***"), unless the party seeking termination is in breach of its obligations hereunder;

(iii)    by Seller or Buyer, if any condition set forth in Section 8 is not satisfied, and such condition is incapable of being satisfied by the End Date; or

(iv)    by Seller, if (i) Seller executes a definitive agreement with a third party (other than Buyer) for the acquisition of all or substantially all the Assets, and (ii) the Bankruptcy Court enters an Order in the Bankruptcy Cases approving such definitive agreement.

The party desiring to terminate this Agreement pursuant to this Section 12(a) (other than pursuant to Section 12(a)(i)) shall give notice of such termination to the other party in accordance with Section 14.

(b)    <u>Effect of Termination</u>. If this Agreement is terminated as permitted by Section 12(a), such termination shall be without liability of any party (or any stockholder, director, officer, employee, agent, consultant or representative of such party) to the other party to this Agreement.

(c)    <u>Fees and Expenses</u>.  Except as otherwise set forth expressly herein, all costs and expenses incurred by the parties in connection with obtaining Bankruptcy Court approval and consummation of this Agreement and the Transactions contemplated hereby shall be paid by the party incurring such cost or expense.

13.    **Bankruptcy Issues**.

(a)    <u>Filing of Sale Motion</u>.  Within five (5) business days of the date of this Agreement, Seller shall file with the Bankruptcy Court a motion (the "***Sale Motion***") seeking, among other things, the entry of the Sale Order, which shall be a Final Order.

(b)    <u>Bankruptcy Court Approval of Sale</u>.  Seller and Buyer shall each use their reasonable efforts, and shall cooperate, assist and consult with each other, to secure the entry of the Sale Order as a Final Order of the Bankruptcy Court in the Bankruptcy Cases in form and

9

substance acceptable to Seller and Buyer containing provisions, including without limitation, (i) approving this Agreement, (ii) authorizing the sale of the Acquired Location Set 1 Assets pursuant to Section 363 of the Bankruptcy Code, (iii) authorizing the assumption and assignment of the Assumed Contracts pursuant to Section 365 of the Bankruptcy Code, (iv) authorizing the Transactions, and (v) providing that this Agreement and the Transactions are undertaken by Buyer and Seller at arm's length, without collusion, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code, that Buyer and Seller are entitled to the protections of Section 363(m) of the Bankruptcy Code, and that the provisions of Section 363(n) of the Bankruptcy Code are not applicable. Seller and Buyer shall cooperate with one another in good faith regarding pleadings that either of them intends to file, or positions either of them intends to take, with the Bankruptcy Court in connection with or that might reasonably affect the Bankruptcy Court's entry of the Sale Order as a Final Order.

14.    **Notices**. All notices required or permitted to be given by any party shall be in writing and shall be deemed to have been properly given if sent by registered or certified mail, or by recognized overnight courier service (the "***Courier Service***"), postage prepaid, to the parties at the addresses set forth below or to such other address as any party may from time to time give notice pursuant to this section. All notices shall be deemed received when delivered but in no event later than five (5) business days after they are deposited with either the United States Postal Service or the Courier Service, whichever shall first occur. Notice shall be given at the following addresses:

> To Buyer:
>
> IH Restaurants LLC
> 235 Walnut Street
> Libertyville, IL  60048
> Attention: Jeff Crivello
>
> With a copy to:
>
> Gellert Seitz Busenkell & Brown LLC
> 1201 North Orange Street, 3rd Floor
> Wilmington, Delaware  19801
> Attention: Ronald Gellert
>
> To Seller:
>
> Andrew Sklar, Chapter 7 Trustee
> 1020 Laurel Oak Road
> Suite 203
> Voorhees, NJ  08034

178534697.4

> With a copy to:
>
> Michael G. Menkowitz, Esquire
> Fox Rothschild, LLP
> Two Commerce Square
> 2001 Market Street, Suite 1700
> Philadelphia, PA 19103

15.    **Entire Agreement**. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and undertakings, if any, with respect to the matters covered hereby.

16.    **Miscellaneous**. This Agreement may not be changed, modified or amended except by writing signed by each party hereto. Except as to subsidiaries and successors of any party to this Agreement, this Agreement shall not be assigned or otherwise transferred by either party without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. This Agreement shall be binding upon and inure to the benefit of the successors, subsidiaries, affiliates and permitted assigns of the parties. This Agreement shall be governed by and construed in accordance with the laws of the state of Delaware and the Bankruptcy Court shall retain jurisdiction over this Agreement.

178534697.4

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals as of the date first written above.

SELLER:

WITNESS/ATTEST:

ANDREW SKLAR,
CHAPTER 7 TRUSTEE FOR
IRON HILL BREWERY, LLC

_____    By: _____(SEAL)
                                Andrew Sklar, Chapter 7 Trustee

BUYER:

WITNESS/ATTEST:

IH Restaurants LLC

_____    By: _____(SEAL)
                                Jeff Crivello, Member/Representative

12

178534697.2

**Schedule 1**

**Debtor Locations**

(a)      **Location Set 1:**

Wilmington, DE
Hershey, PA
Newtown, PA
Center City, Philadelphia, PA
Lancaster PA
Media, PA
Huntingdon Valley, PA
West Chester, PA
Exton, PA
Rehoboth, DE
Greenville, SC
Columbia, SC

(b)      **Location Set 2:**

Location 2 Set:
North Wales, PA
Lehigh Valley, PA
Voorhees, NJ
Maple Shade, NJ
Dunwoody, GA
Chestnut Hill, PA
Ardmore, PA

13

178534697.4

**Schedule 2**

**<u>Assumed Contracts</u>**

[Reserved]

**Schedule 3**

**<u>Designee Schedule</u>**

<u>Location</u>                                                    <u>Designee Entity</u>

Wilmington, DE

Hershey, PA

Newtown, PA

Center City, Philadelphia, PA

Lancaster PA

Media, PA

Huntingdon Valley, PA

West Chester, PA

Exton, PA

Rehoboth, DE

Greenville, SC

Columbia, SC

178534697.4